**In re Eric C. KURTZMAN, Esq., Trustee in Bankruptcy for Rory G. Pilcher, et al., Appellant.**

**No. 98 CIV. 1416(BDP).**

United States District Court, S.D. New York.

May 20, 1998.

539

Stein, Riso, Haspel & Jacobs, L.L.P., New York City, Co–Attorneys for Appellant.

Kurtzman, Resnik, Matera & Gurock, Spring Valley, NY, Co–Attorneys for Appellant.

## MEMORANDUM DECISION AND ORDER

BARRINGTON D. PARKER, Jr., District Judge.

In this consolidated appeal involving twenty-six Chapter 7 bankruptcy estates [1] Eric C.

1. *In re: Rory G. Pilcher and Joanne Pilcher,* 98 Civ. 1416(BDP); *In re: Carlos Montoya,* 98 Civ. 1417(BDP); *In re: Richard J. Cimino, Sr. and Judith N. Cimino,* 98 Civ. 1419(BDP); *In re: Carol P. Collins,* 98 Civ. 1420(BDP); *In re: Glen*

*T. Mitchell,* 98 Civ. 1421(BDP); *In re: Scott M. Lask and Caren D. Lask,* 98 Civ. 1423(BDP); *In re: Dorothea A. Judson,* 98 Civ. 1424(BDP); *In re: Jonathan Kern,* 98 Civ. 1428(BDP); *In re: Feti Canpolat,* 98 Civ. 1431(BDP); *In re: Charles*

Kurtzman, Esq., as Trustee for each of the estates, challenges two related orders of United States Bankruptcy Judge Jeremiah E. Berk. The first order, entered January 28, 1998, denied Kurtzman's application for retention of his own law firm, Kurtzman Resnik Matera & Gurock, as attorneys for himself as trustee in thirteen of the cases. Following an October 14, 1997 hearing, the Court concluded that its prior dealings with Kurtzman's firm had caused the Court to lack confidence in the firm. Based principally on this lack of confidence, the Court concluded that the firm's retention would not, under 11 U.S.C. § 327(d), be in the best interest of the estates.

The second order, entered January 12, 1998 following a January 8, 1998 hearing, denied Kurtzman's application for retention of the law firm of Stein Riso Haspel & Jacobs LLP as attorneys for Kurtzman as trustee under 11 U.S.C. § 327(a) in eighteen cases [2] because the firm would not reduce its hourly rate to what the Court concluded was the prevailing $200.00 maximum charged by similar firms for comparable legal services within the Court's seven-county venue.

For the reasons stated below, both orders of the Bankruptcy Court are affirmed.

## DISCUSSION

■ Under 28 U.S.C. § 158(a) and (c), the District Court is authorized to exercise appellate jurisdiction over final orders of the Bankruptcy Court. *See* Bankr.Rule 7052 (incorporating Fed.R.Civ.P. 52); Bankr.Rule 8013. Accordingly, this Court reviews the Bankruptcy Court's conclusions of law *de novo* and its factual findings under a "clearly erroneous" standard. *In re Maxwell Newspapers, Inc.*, 981 F.2d 85, 89 (2d Cir.1992). The particular orders on this appeal—involv-

ing decisions relating to the retention of counsel—are, in addition, reviewed for an abuse of discretion. *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463 (3d Cir.1998). "An abuse of discretion exists where the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *Id.* (quoting *ACLU of New Jersey v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1476 (3d Cir.1996)).

■ With respect to the January 28, 1998 Order declining to appoint Kurtzman's firm to represent him as trustee, Kurtzman has not demonstrated that the Court below abused its discretion in declining to allow the representation. The Judge's findings, that retention of Kurtzman's firm under 11 U.S.C. § 327(d) would not be in the best interest of the estates, were set forth in considerable detail at the October 14, 1997 hearing. (*See, e.g.,* Transcript pp. 14–39.) The Court's findings were based upon extensive dealings with that firm over the prior two years. The Court gave a number of general examples of prior problems involving time records, billing errors, professional conduct, and overall costs of legal services that had led to its conclusion of loss of confidence in the firm.

■ Appellant argues that the procedures followed below in reaching these conclusions did not comport with due process, because inadequate specificity with respect to the particular deficiencies the Court relied upon precluded any meaningful response. The contours of the notice and the formality of the hearing required by due process are not fixed, but depend on the character of the proceeding in question. *See, e.g., Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *Hollingsworth v. Robinson*, 901 F.Supp. 565, 569 (E.D.N.Y.1995).

---

*P. Benson d/b/a Benson Auto Repair,* 98 Civ. 1433(BDP); *In re: Barbara A. Baird,* 98 Civ. 1434(BDP); *In re: Maria Guisao,* 98 Civ. 1439(BDP); *In re: Charles James Balli and Joyce Ann Balli,* 98 Civ. 1440(BDP); *In re: Mitchell Rothman,* 98 Civ. 1441(BDP); *In re: Donald Klybas,* 98 Civ. 1442(BDP); *In re: Donald Klybas,* 98 Civ. 1636(BDP); *In re: Glenn Albert Sayers and Diane Michelle Sayers,* 98 Civ. 1637(BDP); *In re: Feti Canpolat,* 98 Civ. 1638(BDP); *In re: Charles E. Fowler,* 98 Civ. 1640(BDP); *In re: Donald McCue,* 98 Civ

1641(BDP); *In re: Scott M. Lask and Caren D. Lask,* 98 Civ. 1642(BDP); *In re: Charles James Balli and Joyce Ann Balli,* 98 Civ. 1643(BDP); *In re: Barbara A. Baird,* 98 Civ. 1644(BDP); *In re: Dorothea A. Judson,* 98 Civ. 1651(BDP); *In re: Mitchell Rothman,* 98 Civ. 1652(BDP); *In re: Jonathan Kern,* 98 Civ. 1653(BDP).

**2.** Five cases affected by the two orders are apparently not being appealed.

By its very nature, the "best interest of the estate" under § 327(d) is a concept that affords the court considerable discretion in making evaluations and comparisons regarding the performance of counsel. In light of this discretion, the Court below was entitled to rely on its own first-hand observations and, based on those observations, to draw its own conclusions regarding professional performance. Here, the presiding judge was in a unique position to observe the conduct of counsel over a significant period of time, and to compare counsel's performance with that of other attorneys performing similar work. The Court articulated and specified its concerns, which admittedly were of a conclusory nature, and afforded Appellant an opportunity to respond. Since the "right" that Appellant seeks to vindicate rests in the final analysis with the discretion of the Court, we cannot conclude that the hearing afforded Appellant failed to meet constitutional standards.[3]

Although at oral argument counsel sharply alluded to the taint of bias or personal animosity on the proceedings below, no evidence of any consideration other than professional conduct was presented at the October 14, 1997 hearing and none is apparent from the record. Although Appellant points to the fact that the United States Trustee did not oppose the application, the decision as to what comports with "the best interest of the estate" rests with the Court, not with the United States Trustee. *See* 11 U.S.C. § 327(d). Based on the record presented, this Court is unable to conclude that the lower Court's findings were clearly erroneous or that it abused its discretion in declining to appoint the Trustee's firm as his counsel. The January 28, 1998 Order is therefore affirmed.

The January 12, 1998 Order declining to appoint the Stein Riso firm was entered pursuant to 11 U.S.C. § 327(a). That provision provides:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons,[4] to represent or assist the trustee in carrying out the trustee's duties under this title.

Appellant argues that under this provision, the Bankruptcy Court's denial of Kurtzman's application to retain the Stein Riso firm to represent Kurtzman as trustee was also erroneous. Joseph Haspel of that firm insisted on receiving $295 per hour for his work. The Bankruptcy Court determined that the proposed $295 hourly fee for Haspel was excessive in light of the modest assets of the estates involved, the work to be performed, and the prevailing rates within the geographic area of the Bankruptcy Court, and indicated that it would approve the application only if the work were done at the rate of $200 per hour. Haspel refused the reduction, contending he would lose money at that rate.

Section 327(a) provides that court approval is necessary before a trustee can retain counsel. While the test of the disinterestedness of the attorney is one consideration for the court in determining whether to approve a trustee's choice of attorney, nowhere in the statute is the court's discretion limited to determinations of disinterestedness. Indeed, the purpose of § 327 is: "to insure *in advance* both that the person's employment is necessary to the estate and that the person employed is disinterested and able to serve the best interests of the estate." *In re That's Entertainment Mar-*

---

3. More to the point, in order to establish a valid claim for deprivation of procedural due process, Appellant must show that he was deprived of some sort of property interest. *Dwyer v. Regan,* 777 F.2d 825, 829 (2d Cir.1985). In order "to have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it." *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Appellant simply has no property interest in having his law firm represent himself as trustee here.

4. 11 U.S.C. § 101(14) includes in its definition of "disinterested person" a "person that—(4)27 (E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason(4)27"

*keting Group, Inc.,* 168 B.R. 226, 229 (N.D.Cal.1994) (emphasis added) (quoting *In re Cormier,* 35 B.R. 424 (D.Me.1983)).

Appellant cites *In re Marvel Entertainment Group, Inc., supra,* in support of his argument that the bankruptcy court's analysis is limited to determining questions of disinterestedness. *Marvel,* however, concerned an analysis of § 327(a) with respect to potential conflicts of counsel. In that case, the trustee moved for an order authorizing employment of a law firm as counsel for the trustee. *Id.* at 470. Because the firm had represented a creditor in the bankruptcy in unrelated proceedings, the court denied the trustee's motion after a hearing. *Id.* The Court of Appeals reversed, holding that under § 327(a), only an actual or potential conflict of interest allowed a district court to disqualify an attorney as trustee's counsel. *Marvel,* however, did not bar considerations other than conflict of interest in a court's determination of whether to appoint an attorney as trustee's counsel under § 327. Thus, while disinterestedness and the absence of conflicts may be central to the inquiry, they are by no means exclusive. Indeed, section 327(a) vests the authority for "approval" within the sound discretion of the Court. That authority would be eviscerated were the Court required to approve counsel who met the technical test for disinterest but was ill-suited for other reasons such as, for example, inexperience. *See* 11 U.S.C. § 101(14).

Moreover, 11 U.S.C. § 328(a) suggests a broader understanding of the scope of the court's discretion in approving or disapproving a trustee's choice of attorney:

> (a) The trustee, ... with the court's approval, may employ or authorize the employment of a professional person under section 327 ... of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis.

By implication, then, under 11 U.S.C. § 328(a) a court may disapprove a trustee's choice of counsel if the proposed rate of compensation is not reasonable.

 Appellant disputes the Bankruptcy Court's determination of the excessiveness of the hourly rate, and contends that local billing rates should not factor into the fees the Court is willing to entertain. On the record presented, however, there is no evidence that the Court's understanding of the maximum geographic hourly rate is clearly erroneous. Further, bankruptcy courts are permitted to take into account the local billing rates in determining the proper compensation for attorneys. *See, e.g., In re Palm Beach Cruises, S.A.,* 208 B.R. 78, 81 (Bankr.S.D.Fla. 1997); *In re Casey,* 173 B.R. 893, 894 (Bankr. E.D.Tex.1994); *In re Speeds Billiards & Games, Inc.,* 149 B.R. 434, 439 (Bankr. E.D.Tex.1993); *Pereira v. Checkmate Communications Co., Inc. (In re Checkmate Stereo & Electronics, Ltd.),* 21 B.R. 402, 413 (E.D.N.Y.1982). While billing rates generally become an issue after an attorney's approval by the court, nothing in the statute mandates that they can not be considered earlier. Where, as here, counsel announces in advance that the work would be unprofitable at what the Court determines to be the prevailing rate, the Court is entitled to assimilate that information in its initial determination as to whether an application for counsel should be approved. To hold otherwise would be to invite repetitive fee dispute litigation following the resolution of modest estates and to allow counsel to render legal services known in advance to be uneconomical—two results to be avoided where possible.

## CONCLUSION

For the foregoing reasons, the January 12, 1998 and January 28, 1998 Orders of the Bankruptcy Court are affirmed.

**SO ORDERED.**