COURT OF 
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-207-CV
  
  
TRI-STEEL 
STRUCTURES, INC.                                                APPELLANT
  
V.
   
BAPTIST 
FOUNDATION OF TEXAS,                                          APPELLEES
INDIVIDUALLY 
AND AS TRUSTEE,
MAURINE 
P. MYERS, DOROTHY N.
MYERS 
AND MARK A. KUHN, TRUSTEE
OF 
THE DEWITT LUTHER MYERS AND
MAURINE 
PARKER MYERS TRUST
 
  
------------
 
FROM 
THE 211TH DISTRICT COURT OF DENTON COUNTY
 
------------
 
OPINION
 
------------
I. Introduction
        Appellant 
Tri-Steel Structures, Inc. (“Tri-Steel”) appeals from a final judgment 
granted to Appellees Baptist Foundation of Texas (“the Foundation”), 
individually and as trustee, Maurine P. Myers and Dorothy N. Myers (collectively 
“Myers”), and Mark A. Kuhn (“Kuhn”), trustee of the Dewitt Luther Myers 
and Maurine Parker Myers Trust (“the Trust”).  We will affirm.
II. Factual Background
        This 
case involves an attempted extension of a lease through a method of notice not 
in strict compliance with requirements under the lease.  In 1982, Tri-Steel 
leased some real property in Denton County from Myers.  The two lease 
agreements (“1982 leases”) were for five years, with a five-year 
option-to-extend provision.  After exercising the option, Tri-Steel 
occupied the property through 1992 under the 1982 leases and extension 
provisions.  A new lease was negotiated in 1992 for the property that had a 
three-year term commencing September 1, 1992.  An addendum to the 1992 
lease allowed a three-year extension option at the end of the term.
        On 
December 12, 1995, the parties executed an Amendment to Lease Agreement (the 
“Amendment”), amending certain provisions and extending the 1992 lease until 
August 31, 2000. The Amendment provided that any term of the 1992 lease not 
amended by the Amendment remained in effect. The Amendment also specified in 
part that “[i]n order to exercise this option [to extend the lease beyond 
August 31, 2000], [t]enant must give notice to [l]andlord in writing, by 
certified mail, on or before 90 days prior to the termination of the extended 
term.”
        Prior 
to the date of the Amendment, Myers and Tri-Steel had a history of not following 
the exact terms of their agreements with regard to written notifications and 
using certified mail but had on occasion acted more informally.
        In 
August 1998, Myers transferred three-quarters’ ownership interest in the 
property to the Foundation and the remaining one-quarter to the Trust 
administered by Kuhn. Following this transfer, the Foundation managed the 
property, served as landlord, and enforced the terms and conditions of the lease 
agreements more strictly than Myers. On May 8, 2000, approximately four months 
before the 1992 lease was to terminate, the Foundation sent Tri-Steel a letter 
indicating in part that it had “every intention of enforcing all the rights of 
the landlord under the lease.” It is not disputed that Tri-Steel did not 
exercise its option to extend the 1992 lease by the method to which it had 
agreed—in writing by certified mail ninety days or more before the 1992 lease 
termination date.
III. Procedural Background
        After 
not receiving a written notice of extension in conformance with the literal 
terms of the Amendment, the Foundation filed an eviction lawsuit in Denton 
County after Tri-Steel allegedly refused to remove all its possessions from the 
property at the expiration of the lease, August 31, 2000. Following a jury 
verdict in favor of the Foundation, a writ of possession was issued and 
Tri-Steel was evicted from the property on October 30, 2000. Tri-Steel sued the 
Foundation in June 2001 and also filed lis pendens notices. Following the filing 
of the Foundation’s original answer, Tri-Steel amended its petition on October 
1, 2001, added Myers and Kuhn as defendants, and, inter alia, asserted 
that the Foundation breached the lease extension provision of the Amendment 
because Tri-Steel had properly exercised the lease extension option in 
conformance with its past dealings with the landlord. Tri-Steel also filed 
amended lis pendens. Myers and Kuhn answered on October 31, 2001. Following the 
filing of further lis pendens notices, the trial court lifted the notices and 
sanctioned Tri-Steel.
        On 
November 2, 2001, the Foundation filed a motion for partial summary judgment on 
the issue of notice of lease extension. Shortly thereafter, Myers and Kuhn filed 
corresponding motions for partial summary judgment. On November 29, 2001, a 
hearing on the motions for partial summary judgment was held. Two days prior, 
the Foundation had filed its objections to Tri-Steel’s response and summary 
judgment evidence that had been filed by Tri-Steel on November 26. Kuhn and 
Myers lodged identical objections the day of the hearing. At the conclusion of 
the hearing, Tri-Steel, which had sought no discovery to that point, requested a 
continuance to take three depositions to address the form and hearsay objections 
that Appellees had asserted to the evidence Tri-Steel had sought to introduce at 
the hearing. This motion was denied by the trial court, which also signed an 
order sustaining the majority of Appellees’ objections to Tri-Steel’s 
evidence. On December 12, 2001, the trial court granted the motions for partial 
summary judgment of the Foundation, Myers, and Kuhn. In October 2002, Tri-Steel 
declared bankruptcy, which stayed claims against Tri-Steel but did not affect 
Tri-Steel’s prosecution of its remaining claims against the Foundation, Myers, 
and Kuhn. See, e.g., In re United States Abatement Corp., 39 F.3d 563, 
568 (5th Cir. 1994). Finally, the trial court held a 
dismissal-for-want-of-prosecution hearing, at which Tri-Steel did not appear, 
resulting in the dismissal of Tri-Steel’s remaining claims and a March 26, 
2003 final judgment in favor of the Foundation, Myers, and Kuhn. Following the 
denial of a motion for new trial, Tri-Steel perfected this appeal.
IV. Continuance
        A. Background
        In 
its first issue, Tri-Steel asserts error on the part of the trial court in 
failing to grant its motion for continuance of the hearing on the 
Foundation/Myers/Kuhn motions for partial summary judgment. At the conclusion of 
the hearing, counsel for Tri-Steel stated, “I have got a motion for 
continuance that I must file so that I could take depositions. And these are all 
form objections and we would ask that - - ask to file that.” The court then 
stated, “Well, the motion for continuance is denied. You may file it, 
though.” Subsequently, on November 29, Tri-Steel filed Plaintiff’s Motion 
for Continuance, which, in part, stated as the reason for the continuance that 
the plaintiff be allowed
    

to take the deposition of (i) Defendant Dorothy Myers, (ii) Jeff Smith, a 
representative of the Foundation and a recipient of a letter which is one of the 
Exhibits and (iii) Tom Hollanger, a representative of the Foundation, in order 
to cure the hearsay objections raised by the Foundation. Hearsay objections are 
objections to form. [Citation omitted.] Plaintiff must be given an opportunity 
to cure these defects in form before the Court rules on the motions for summary 
judgment.
  
  
No 
other reason for requesting a continuance was stated. The record does not 
reflect that this motion was granted, so it therefore was implicitly denied.
        B. Standard of Review
        The 
denial of a motion for continuance is reviewed under an abuse of discretion 
standard. General Motors Corp. v. Gayle, 951 S.W.2d 469, 476 (Tex. 1997) 
(orig. proceeding). The denial will be reversed if the trial court acted without 
regard to guiding principles or was arbitrary or unreasonable. BMC Software 
Belg., N.V. v. Marchand, 83 S.W.3d 789, 800 (Tex. 2002). In order for a 
continuance to be granted, cause must be shown, supported by affidavit. Tex. R. Civ. P. 251. Further, if the 
basis for the requested continuance is “want of testimony,” the affidavit 
must show (1) that the testimony is material, (2) that due diligence has been 
used to obtain the testimony, (3) that there is an explanation given for the 
failure to obtain the testimony, and (4) that the testimony cannot be procured 
from another source. Tex. R. Civ. P. 
252.
        C. Analysis
        Tri-Steel’s 
Plaintiff’s Motion for Continuance, when viewed in its entirety, does not meet 
requirements 2, 3, and 4 enumerated above. Further, the motion for continuance 
itself was not “in the required affidavit form” as asserted by Tri-Steel, 
nor was it supported by affidavit. Therefore, the motion for continuance did not 
meet the requirements of Rule 251 or 252.
        Rule 
166a(g) specifically allows a court to grant a continuance to permit depositions 
to be taken upon a showing that the requesting party “cannot for reasons 
stated present by affidavit facts essential to justify his opposition.” Tex. R. App. P. 166a(g). However, this 
procedure was not utilized by Tri-Steel.
        Rule 
166a(f) indicates that a party offering an affidavit that is defective in form, 
as pointed out by the opposing party, should have the “opportunity” to 
amend. Tex. R. App. P. 166a(f). 
Tri-Steel is correct that hearsay is a defect in form. A defect is substantive 
if the summary judgment proof is incompetent; it is formal if the summary 
judgment proof is competent, but inadmissible. Trusty v. Strayhorn, 87 
S.W.3d 756, 764 (Tex. App.—Texarkana 2002, no pet.). Generally, a motion for 
continuance is the proper procedure to obtain this “opportunity.” Webster 
v. Allstate Ins. Co., 833 S.W.2d 747, 750 (Tex. App.—Houston [1st Dist.] 
1992, no writ). If the “opportunity” is needed to take depositions, that is, 
for “want of testimony,” the rule is silent as to whether a continuance 
motion must meet the requirements of Rule 252. Tex. R. Civ. P. 252. No case law appears 
to have addressed this specific issue. We hold that if additional evidence is 
requested to be submitted through the initiation of discovery for “want of 
testimony,” (1) the summary judgment hearing must be continued to allow the 
new evidence to be presented to the court, and (2) a motion for continuance 
consistent with Rule 252 is required. Id. Otherwise, summary judgment 
affidavits would be replete with hearsay, with little impetus to obtain proper 
discovery before the hearing to avoid hearsay rulings.
        On 
the other hand, if an amended affidavit is requested to be substituted for the 
affidavit already admitted (for example, the original affidavit omits one of the 
form requirements—the affiant is over the age of 18, the affidavit is based on 
personal knowledge, etc.) then the court may allow through a timely 
“request,” as opposed through a motion for continuance, a corrected 
affidavit to be substituted for the previous affidavit already considered. This 
would not require the initiation of discovery or continuance of the hearing. 
This is consistent with the language of this court’s holding in Coleman v. 
Wolf, 129 S.W.3d 744 (Tex. App.—Fort Worth 2004, no pet.), that
   
[s]he did not request or file a motion for continuance; she did not tender an 
amended affidavit or seek leave to file an amended affidavit during the two 
weeks that the trial court had Dr. Wolf’s motion for summary judgment under 
advisement. Coleman never made a timely request, objection, or motion 
seeking the opportunity to cure the defect . . . .
   
  
Id. 
at 750 (emphasis supplied). Under the facts before us, additional discovery in 
the form of three depositions for Rule 252 “want of testimony” was sought, 
which required a formal motion for continuance meeting the requirements of Rule 
252. We hold there was no abuse of discretion in the trial court’s denial of 
the motion for continuance and overrule Tri-Steel’s first issue.
V. Affidavit Objections
        A. 
Exhibits C and I
        In 
its second issue, Tri-Steel asserts that the trial court erred in sustaining 
certain objections to the affidavit of John Brown, filed in response to the 
Foundation/Myers/Kuhn motions. The only specific objections that Tri-Steel 
asserts as error by the trial court are in sustaining objections to Exhibit C 
(except paragraphs 5 and 6, which were admitted) and Exhibit I, both attachments 
to the Brown affidavit. Other general statements about objections are 
non-specific, vague, and not pointed out with sufficient clarity for this court 
to consider. See Tex. R. App. P. 
38.1(h). As a result, they are waived. Exhibit C is an unsigned September 5, 
1985 letter from John Brown to Dorothy Myers. The stricken paragraphs concern an 
invitation to Myers to come out and view work occurring at the premises. The 
paragraphs concerning the lease and extension of the lease term were admitted by 
the trial court (paragraphs 5 and 6). Exhibit I is a December 3, 1998 letter, 
unsigned, from John Brown to Jeff Smith at the Foundation, and is a discussion 
of their lease, an offer to buy out its remaining term, and a proposal for the 
Foundation to finance a move by Tri-Steel to another location. Tri-Steel argues 
that Exhibits I and the stricken part of Exhibit C, although hearsay, met the 
hearsay exception of Texas Rules of Evidence 803(15), entitled “Statements in 
Documents Affecting an Interest in Property.”
        B. Interest in Property—Evidentiary Rule 803(15)
        At 
issue in this appeal is whether it was necessary for Tri-Steel to timely send a 
written notice of lease extension by certified mail to the Foundation consistent 
with the literal terms of the 1995 Lease Amendment. Tri-Steel argues that the 
parties have a course of dealing between them such that literal compliance with 
notice obligations between the parties had been unenforced and therefore the 
right to enforce the provision in question had been waived by the Foundation. 
Further, Tri-Steel urges that Exhibits I and C show this informal relationship 
between the parties and thusly affect Tri-Steel’s interest in the leased 
property.
                Another 
court has reviewed the history of Rule 803(15):
   
Texas Rule of Civil Evidence 803(15) [now Texas Rule of Evidence 803(15)], 
effective in 1983, adopted the federal version of this evidence rule . . . . 
Federal Rule of Evidence 803(15) and Texas Rule of Civil Evidence 803(15) state:
 
  

Statements in Documents Affecting an Interest in Property. A statement contained 
in a document purporting to establish or affect an interest in property if the 
matter stated was relevant to the purpose of the document, unless dealings with 
the property since the document was made have been inconsistent with the truth 
of the statement or the purport of the document.
 
   
The advisory committee's note accompanying the federal rule explains the 
rationale for this rule. The note states that "[d]ispositive documents 
often contain recitals of fact . . . [and the] circumstances under which 
dispositive documents are executed and the requirement that the recital be 
germane to the purpose of the document are believed to be adequate guarantees 
of trustworthiness . . ." One federal court stated that recitals 
contained in documents affecting interests in property are admissible as proof 
of the matters asserted and are strong evidence concerning such matters. Compton 
v. Davis Oil Co., 607 F.Supp. 1221, 1228 (D.C.Wyo.1985). This hearsay 
exception is based upon the reliability of such documents. Id. at 1229. 
In Compton v. WWV Enterprises, 679 S.W.2d 668, 671 (Tex. App.—Eastland 
1984) no writ, the court of appeals construed Texas Rule 803(15) to relate to 
recitals or statements made in "deeds, leases, mortgages, and other such 
'documents affecting an interest in property'". (Emphasis supplied). 
Additionally, this Court has expressed that an exception to the hearsay rule 
should be liberally construed, but not mechanistically applied. Coulter v. 
State, 494 S.W.2d 876, 883 (Tex.Cr.App.1973) (interpreting business records 
exception).[1] 
 
        Other 
cases have discussed Rule 803(15)’s application to a variety of documents. See, 
e.g., Guidry v. State, 9 S.W.3d 133, 146-47 (Tex. Crim. App. 1999), cert. 
denied, 531 U.S. 837 (2000) (sworn inventory of property filed 
in a divorce proceeding held to be admissible under 803(15)); Harris v. State, 
846 S.W.2d 960, 964-65 (Tex. App.—Houston [1st Dist.] 1993, pet. ref’d) 
(statements in an official General Motors’ Certificate of Origin 
regarding ownership of a vehicle were admissible under 803(15)). However, courts 
have not applied 803(15) to admit statements from documents that do not exhibit 
the same levels of reliability as found in formal or official documents or do 
not specifically meet the criteria of the rule. See McCraw v. Maris, 837 
S.W.2d 646, 651 (Tex. App.—Dallas 1990), rev’d on other grounds, 828 
S.W.2d 756 (Tex. 1992) (refusing to admit an unfiled and unwitnessed 
handwritten insurance beneficiary designation form under 803(15)); Compton 
v. WWV Enters., 679 S.W.2d 668, 671 (Tex. App.—Eastland 1984, no writ) 
(affidavit of heirship not admissible under 803(15)).
        Predecessor 
statutes to the current version of Rule 803(15) allowed for an exception to the 
hearsay rule only for those documents that were recorded instruments.[2]  At the time the federal courts adopted the rule 
corresponding to Texas Rule 803(15), the rule’s scope was enlarged to include 
documents affecting an interest in property, even if unrecorded.  However, 
the scope of the rule is not without limit, as stated in the advisory 
committee’s notes to the federal rule:
    

The circumstances under which dispositive documents are executed and the 
requirement that the recital be germane to the purpose of the document are 
believed to be adequate guarantees of trustworthiness, particularly in view of 
the nonapplicability of the rule if dealings with the property have been 
inconsistent with the document.
  
 
Fed. R. Evid. 803(15) advisory 
committee’s note.
        C. Analysis
        The 
issue presented is whether the stricken portions of Exhibit C, an unsigned 
letter of John Brown to Dorothy Myers dated September 5, 1985, and Exhibit I, a 
December 3, 1998 unsigned letter from John Brown to Jeff Smith at the 
Foundation, are documents containing statements subject to the hearsay exception 
in Rule 803(15). We hold that they are not. As noted in Texas Practice, Volume 2 
by Goode, Wellborn, and Sharlot, “Documents covered by 803(15) include deeds, 
leases, and mortgages.” Goode, 
Wellborn, & Sharlot, 2 Texas Practice § 803.2 (3d ed. 2003). While 
we acknowledge that the Court of Criminal Appeals has taken a more liberal 
approach to the application of this exception to the hearsay rule,[3] the majority of cases addressing the rule require that the 
document have some sort of official or formal nature, which an unsigned letter 
does not possess. Further, the rule requires that dealings with the property not 
be inconsistent with the statement after it was made. The landlord has not 
treated Tri-Steel’s interpretation of its property interest consistent with 
that interpretation—the Foundation did not acknowledge a non-conforming lease 
extension notice, notified Tri-Steel that it intended to enforce all its rights 
as landlord under the lease, and notified Tri-Steel that the lease had expired 
on the date of expiration. In fact, the Foundation resorted to an eviction 
process against Tri-Steel.  For the foregoing reasons, Exhibit I was 
properly excluded.
        Also, 
with respect to Exhibit C, we observe that if any waiver occurred prior to 
August 14, 1998, it was by Myers and not by the Foundation and Kuhn, who held 
the property from that date following its transfer to them. The date of Exhibit 
C is 1985, and it can have no bearing on any waiver of Tri-Steel’s obligation 
affecting the Foundation or Kuhn, when viewed in conjunction with paragraph 26 
of the 1992 lease, which remained in effect at the time the extension notice was 
to be given and stated that “[t]he waiver by [l]andlord of any breach of any 
provision of this lease shall not constitute a continuing waiver or a waiver of 
any subsequent breach of the same or different provision of this lease.”
        Further, 
this court may look only to actions that occurred after the 1995 Amendment came 
into existence for actions purported to give rise to waiver of the lease 
extension requirements because “[i]n order to constitute a waiver, the right, 
benefit, or advantage in question must be in existence at the time . . . . A 
person cannot waive a right before he is in a position to assert it.”  Smith 
v. McKnight, 240 S.W.2d 368, 371 (Tex. Civ. App.—Amarillo 1951, no 
writ).  Put another way, “[w]aiver cannot exist until the thing waived is 
in extistence. . . . To constitute a waiver, the right or privilege alleged to 
have been waived must have been in existence at the time of the alleged 
waiver.” Pennzoil v. Socony Mobil Oil Co., 421 S.W.2d 416, 423 (Tex. 
Civ. App.—El Paso 1967, writ dism’d). Additionally, the 1992 lease, in 
paragraph 32, contained an integration clause that stated, “[T]his agreement 
constitutes the sole and only agreement of the parties to this lease and 
supersedes any prior understandings or written or oral agreements between the 
parties respecting the subject matter of this lease.” “The purpose of an 
integration clause is to trigger the parol evidence rule which precludes the 
enforcement of inconsistent or prior agreements in a finalized contract.” Coffman 
v. Provost * Umphrey Law Firm, L.L.P., 161 F.Supp.2d 720, 728 (E.D. Tex. 
2001), aff’d, 33 Fed.Appx. 705, 2002 WL 433003 (5th Cir. 2002), cert. 
denied, 537 U.S. 880 (2002). Therefore, only actions by the Foundation or 
Kuhn on or after August 14, 1998, or actions by Myers after December 12, 1995 
and before August 14, 1998 and under the terms of the 1995 Amendment to the 1992 
lease, could in any way constitute waiver of the 
ninety-day-notice-in-writing-by-certified-mail requirement to extend the lease 
past August 31, 2000. The 1985 date of Exhibit C is outside of the time period 
(1995-2000) wherein any actions by Myers or by Foundation/Myers/Kuhn could 
affect an interest in the property. Those portions of the 1985 letter that were 
stricken were mere pleasantries and an invitation to come inspect some work on 
the premises, and these portions in no way affect a property interest of any 
party or constitute an informal agreement concerning a lease extension. For all 
these reasons, the trial court did not err in striking portions of Exhibit C.
VI. Fact Issues
        In 
its third issue, Tri-Steel asserts that it raised fact questions that precluded 
granting the Foundation/Myers/Kuhn motion for summary judgment. No citations to 
the record are set forth. This issue is inadequately briefed and is waived. See 
Tex. R. App. P. 38.1(h). This 
issue is overruled.
VII. Jurisdiction
        A.     Introduction
        Appellees 
reurge the Foundation’s jurisdictional argument previously decided by this 
court by order. The issue presented is whether the trial court may deprive this 
court of its appellate jurisdiction by striking a timely filed notice of appeal 
under Rule 12 of Texas Rules of Civil Procedure. See Tex. R. Civ. P. 12. Because the 
application of Rule 12 to deprive this court of jurisdiction over a timely 
perfected appeal is not supported by the underlying purpose of Rule 12 or 
authorized by case law, we hold that the trial court erred by striking 
Tri-Steel’s notice of appeal.
        B.     Factual 
Background
        Attorney 
William L. Wolf filed suit on behalf of appellant Tri-Steel. The trial court 
granted several partial summary judgments and, on March 26, 2003, dismissed 
Tri-Steel’s remaining claims against Appellees for want of prosecution. Wolf 
timely filed a motion for new trial on behalf of Tri-Steel. Wolf’s motion for 
new trial pointed out that Tri-Steel had filed a petition in bankruptcy five 
months earlier, on October 1, 2002. The trial court signed a written order 
denying Tri-Steel’s motion for new trial, and on June 24, 2003, Wolf timely 
filed a notice of appeal on Tri-Steel’s behalf.
        After 
Wolf filed the notice of appeal, Appellees filed in the trial court a “Motion 
to Show Authority” under Rule 12, alleging that Wolf did not have authority to 
file a notice of appeal on behalf of appellant Tri-Steel. See Tex. R. Civ. P. 12. Appellees argued 
that Wolf lacked authority because the bankruptcy court had not authorized Wolf 
to continue to prosecute Tri-Steel’s suit against them. The trial court 
conducted a hearing, granted Appellees’ motion, and ordered the notice of 
appeal filed by Wolf on behalf of Tri-Steel stricken on July 16, 2003.
        Subsequently, 
on August 29, 2003, Tri-Steel filed with the bankruptcy court an application to 
employ Wolf as special litigation counsel; the bankruptcy court approved 
Tri-Steel’s application on September 12, 2003. Then, on September 25, 2003, 
the bankruptcy court confirmed Tri-Steel’s reorganization plan. Appellees now 
contend that this court lacks jurisdiction over Tri-Steel’s appeal, arguing 
that no valid notice of appeal exists because Wolf had no authority on June 24, 
2003 to file Tri-Steel’s notice of appeal.
        C.     Rule 
12 and This Court’s Appellate Jurisdiction
 
        Appellate 
jurisdiction is vested in this court when a notice of appeal is timely filed. See 
Tex. R. App. P. 25.1(b) (“The 
filing of a notice of appeal by any party invokes the appellate court’s 
jurisdiction.”). In fact, an appellate court has jurisdiction over an appeal 
when the appellant timely files an instrument that is "a bona fide attempt 
to invoke the appellate court’s jurisdiction." Verburgt v. Dorner, 
959 S.W.2d 615, 616 (Tex. 1997). Here, Wolf timely filed Tri-Steel’s notice of 
appeal and invoked this court’s jurisdiction.
        After 
Tri-Steel invoked our jurisdiction, Appellees filed a Rule 12 “Motion to Show 
Authority.” Rule 12 allows a party to a lawsuit who believes the suit is being 
prosecuted without authority to move the trial court to “cause the attorney to 
be cited to appear before the court and show his authority to act.” Tex. R. Civ. P. 12. Appellees’ motion 
alleged that, because Wolf failed to obtain authority from the bankruptcy court 
to file the notice of appeal, Tri-Steel’s notice of appeal should be stricken. 
But this court, not the trial court, is to determine whether a document filed by 
a party properly invokes our appellate jurisdiction. See Tex. Gov’t Code Ann. § 22.220(c) 
(Vernon 2004) (authorizing court of appeals to determine matters of fact 
necessary to proper exercise of jurisdiction); accord Tex. R. App. P. 29.5(b) (prohibiting 
trial court retaining jurisdiction in interlocutory appeal from making order 
interfering with appellate court jurisdiction). Rule 12 does not grant the trial 
court authority to dispose of Tri-Steel’s appeal by striking its timely filed 
notice of appeal.
        Appellees 
do not dispute that Tri-Steel engaged Wolf to represent it in this lawsuit 
before it filed for Chapter 11 bankruptcy. Once Tri-Steel entered bankruptcy, 
however, it was required to secure the approval of the bankruptcy court to 
continue employing Wolf in its lawsuit against Appellees. See 11 U.S.C.A. 
§ 327(e) (West 2004) (allowing the debtor in possession, with the bankruptcy 
court’s approval, to employ “for a specified special purpose, other than to 
represent the [debtor in possession] in conducting the case, an attorney that 
has represented the debtor, if in the best interest of the estate, and if such 
attorney does not represent or hold any interest adverse to the debtor or to the 
estate with respect to the matter on which such attorney is to be employed”). 
The statutory note reveals that this section “will most likely be used when 
the debtor is involved in complex litigation, and changing attorneys in the 
middle of the case after the bankruptcy case has commenced would be detrimental 
to the progress of that other litigation.” 11 U.S.C.A. § 327 note. 
Accordingly, the purpose of this requirement is to protect the bankruptcy 
estate. See In re Kurtzman, 220 B.R. 538, 541 (S.D.N.Y. 1998) 
(stating that section 327 ensures “both that the person’s employment is 
necessary to the estate and that the person employed is disinterested and able 
to serve the best interests of the estate”), appeal dismissed as moot, 
194 F.3d 54 (2d. Cir. 1999); see also 11 U.S.C.A. § 328(c) (providing 
that the bankruptcy court may deny compensation from the assets of the 
bankruptcy estate to a professional person who is not a disinterested person, or 
represents or holds an interest adverse to the interest of the estate with 
respect to the matter on which such professional person is employed).
        In 
contrast, Rule 12 operates to protect not the debtor or the bankruptcy estate, 
but the opposing party in the debtor-plaintiff’s lawsuit. The purpose 
of Rule 12 is “to protect defendants from groundless suits.” Angelina 
County v. McFarland, 374 S.W.2d 417, 423 (Tex. 1964) (emphasis added); see 
also Boudreau v. Fed. Trust Bank, 115 S.W.3d 740, 742 (Tex. App.—Dallas 
2003, pet. denied) (“The main purpose behind the rule is that a person is 
entitled to know which person or party in fact authorized the suit.”). 
Wolf’s filing the notice of appeal on Tri-Steel’s behalf does not run afoul 
of this purpose because there was no question that Tri-Steel hired Wolf to file 
a lawsuit against Appellees—in fact, Appellees even filed a counterclaim 
against Tri-Steel—and because Appellees do not contend that the filing of the 
notice of appeal was unauthorized by Tri-Steel. Appellees do not complain that 
the suit against them is groundless or that they do not know who authorized Wolf 
to file the notice of appeal. Furthermore, Tri-Steel has now obtained the 
bankruptcy court’s approval to employ Wolf as its special litigation counsel, 
and Appellees have not ever asked this court to rule that Wolf is without 
authority to prosecute Tri-Steel’s appeal.
        Instead, 
Appellees’ contention is that Tri-Steel’s notice of appeal was a 
“nullity” because the trial court determined that Wolf did not possess 
authority to represent Tri-Steel during the critical time period when a notice 
of appeal was due. Because Tri-Steel as debtor in possession had the power to 
decide that it wanted to pursue an appeal, Appellees’ only legitimate 
complaint can be that the bankruptcy court did not preapprove Tri-Steel’s 
choice of attorney to file the notice of appeal. This complaint does not 
implicate the policies behind Rule 12.[4]
        Accordingly, 
the trial court was not authorized to dispose of Tri-Steel’s appeal by 
striking Tri-Steel’s timely filed notice of appeal.  Therefore, the 
Foundation’s motion to dismiss this appeal was denied by order of this 
court.  We reject Appellees’ argument that this court does not have 
jurisdiction for the reasons set forth herein.
VIII. Conclusion
        Having 
confirmed the jurisdiction of this court and overruled Appellants’ issues, we 
affirm the ruling of the trial court.
 
  
                                                                  BOB 
MCCOY
                                                                  JUSTICE
 
  
 
PANEL 
A:   CAYCE, C.J.; WALKER and MCCOY, JJ.
 
DELIVERED: 
May 26, 2005


NOTES
1.  
Madden v. State, 799 S.W.2d 683, 698 (Tex. Crim. App. 1990), cert. 
denied, 499 U.S. 954 (1991).
2.  
See Act of April 30, 1957, 55th Leg., R.S., ch. 125, § 1, 1957 Tex. Gen. Laws 
226, amended by Act approved June 16, 1965, 59th Leg., R.S., ch. 480, § 
1, 1965 Tex. Gen. Laws 994, repealed by Order Re: New Rules of Evidence, 
641-642 S.W.2d (Texas Cases) XXXV (1983) (civil actions); Order Adopting Texas 
Rules of Criminal Evidence, 701-702 S.W.2d (Texas Cases) XXIX (1986) (criminal 
cases).
3.  
See Madden, 799 S.W.2d at 683.
4.  
Apparently, Tri-Steel’s bankruptcy counsel and Wolf, its litigation counsel, 
were confused about who would represent Tri-Steel in this litigation after 
Tri-Steel filed for bankruptcy.  But because Wolf had accepted employment 
as Tri-Steel’s litigation counsel at the beginning of this lawsuit, and 
because Tri-Steel had not terminated Wolf’s representation, Wolf had a 
continuing duty to “act with competence, commitment and dedication to the 
interest of the client.”  Tex. 
Disc. R. Prof. Conduct 1.01 cmt. 6.  Had Wolf neglected to file 
Tri-Steel’s notice of appeal and let the appellate deadline expire, he might 
have violated his professional duties owed to Tri-Steel. See id.