In re WINGSPREAD CORPORATION, et al., Debtors.

Bankruptcy Nos. 87 B 10618 through 87 B 10630(TLB).

United States Bankruptcy Court, S.D. New York.

April 2, 1993.

Hahn & Hessen, New York City, for the trustee; by George A. Hahn, Roseanne M. Thomas.

Kreindler & Relkin, P.C., New York City, for NationsBank Corp.; by David Lennon, Michael C. Lee.

## DECISION ON OBJECTION TO CONTINUED RETENTION OF ATTORNEYS FOR THE CHAPTER 7 TRUSTEE

TINA L. BROZMAN, Bankruptcy Judge.

The Chapter 7 trustee of Wingspread Corporation and its related debtor subsidiaries (collectively, "Wingspread") seeks authorization for the continued employment of Hahn & Hessen as his counsel in these cases.[1] NationsBank Corporation ("NationsBank"), as successor parent of NCNB National Bank of North Carolina (NCNB) objects to Hahn & Hessen's representation of the trustee in two adversary proceedings presently pending against NCNB because it contends: (a) Hahn & Hessen's representation of a party suing NationsBank's subsidiary is proscribed by the New York Code of Professional Responsibility and applicable common law; (b) Hahn & Hessen has represented NationsBank's subsidiaries in similar matters and continues to represent them; and (c) NationsBank objects to having its lawyers sue its subsidiary. NationsBank agrees

that the conflict which it says taints Hahn & Hessen arose by virtue of a corporate merger and not by virtue of any impropriety or wrongdoing by Hahn & Hessen.

*Background*

In September, 1988, Hahn & Hessen was retained to represent the trustee in the Wingspread cases. This was not, however, Hahn & Hessen's first foray into the cases, for it had previously represented the committee of unsecured creditors. On behalf of the trustee, Hahn & Hessen filed hundreds of avoidance actions, including two against NCNB to avoid certain alleged preferential and fraudulent transfers ("NCNB actions").

On January 1, 1992, NCNB National Bank acquired Citizens & Southern National Bank. To this end, Citizens & Southern/Sovran Corporation, the parent of Citizens & Southern/Sovran Commercial Corporation ("Citizens") was merged into NCNB Corp., a holding company. The merged holding company, named NationsBank, became the parent corporation of numerous subsidiaries, including the two which were previously known as NCNB and Citizens.

During the fifteen years prior to the merger, Citizens had retained Hahn & Hessen from time to time to provide advice and other legal services in connection with various bankruptcy, litigation, and commercial matters. At the time of the merger (which occurred more than three years after the trustee retained Hahn & Hessen), Hahn & Hessen was engaged in representing Citizens in three matters, two of which have since been concluded. The third is a preference action in which Hahn & Hessen is defending Citizens ("the Citizens action") in an unrelated bankruptcy case which, coincidentally, is also pending before me. The Citizens action was discontinued without prejudice in January, 1992; Hahn & Hessen has since expended minimal time executing periodic tolling stipulations on behalf of Citizens.

---

1. Hahn & Hessen moved for authority when it was unable to get any response from Nations-Bank Corporation to Hahn & Hessen's request

that the corporation consent to the continuing representation of the trustee.

As a result of the merger, Hahn & Hessen is now in the position of representing one subsidiary of NationsBank while suing another, although at the time that both representations and suits were commenced, there was no relationship between the companies which are now corporate affiliates.

*Discussion*

■■■■ Motions to disqualify attorneys are generally disfavored and are subject to fairly strict scrutiny to ensure that they are not being interposed merely for tactical reasons. *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir.1989); *Ocean Clear, Inc. v. Continental Casualty Co.*, 94 A.D.2d 717, 462 N.Y.S.2d 251, 253 (2d Dep't 1983) (motions for disqualification have become increasingly popular tools of the litigation process). Recognizing the serious impact of attorney disqualification on the client's right to select counsel, the Second Circuit has indicated that such relief ordinarily should be granted only when a violation of the Canons of the Code of Professional Responsibility poses a significant risk of trial taint. *Armstrong v. McAlpin*, 625 F.2d 433, 444–46 (2d Cir.1980) (*en banc*), *vacated on other grounds and remanded*, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981). Thus, although doubts should be resolved in favor of disqualification, the party seeking disqualification must carry a "heavy burden" and meet a "high standard" of proof before a lawyer is disqualified. *Bennett Silvershein Associates v. Furman*, 776 F.Supp. 800, 803 (S.D.N.Y. 1991).

This Circuit has recognized two circumstances under which disqualification is appropriate:

1) where an attorney's conflict of interest in violation of Canons 5 and 9 of the Code of Professional Responsibility undermines the court's confidence in the vigor of the attorney's representation of his client; or

2) where the attorney is at least potentially in a position to use privileged information concerning the other side obtained through prior representation, for example, in violation of Canons 4 and 9,

thus giving his present client an unfair advantage.

*Board of Education v. Nyquist*, 590 F.2d 1241, 1248 (2d Cir.1979).

■■■■ In evaluating a disqualification motion for alleged dual representation, two different standards are used depending on whether the representation of the two clients is simultaneous or successive. *Stratagem Dev. Corp. v. Heron Intern., N.V.*, 756 F.Supp. 789 (S.D.N.Y.1991). When the firm concurrently represents both parties, courts are to apply a *per se* prohibition; the representation is *prima facie* improper unless the clients consent or the attorney shows, at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation. *Id.; Hartford Accident and Indem. Co. v. RJR Nabisco, Inc.*, 721 F.Supp. 534, 538 (S.D.N.Y.1989); *U.S. v. Nabisco Inc.*, 117 F.R.D. 40 (E.D.N.Y. 1987). But if the case involves former clients of the firm or a vicarious or attenuated representation, the court will inquire as to whether there is a "substantial relationship" between the two matters. *Hartford Accident*, 721 F.Supp. at 538; *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 749 (2d Cir.1981). The Second Circuit has developed this more lenient standard because it "recogniz[es] the serious impact of attorney disqualification on the client's right to select counsel of his choice, [and has thus] indicated that such relief should ordinarily be granted only when a violation of the canons of the Code.... poses a significant risk of trial taint." *Glueck*, 653 F.2d at 748.

In *Glueck*, the Second Circuit enlarged the parameters of the "substantial relationship test" and used it to determine whether a law firm that represented an incorporated trade association could represent a client in an action against a corporation, a division of which was a member of the trade association. Focusing on the attenuated and vicarious nature of the relationship between the law firm and the corporate defendant, the court used the substantial relationship test to determine whether the strict standard promulgated pursuant to

Canon 5 should be applied. *Glueck*, 653 F.2d at 749–50.

■ In light of Hahn & Hessen's involvement in the now-dismissed Citizens action, selection of the appropriate standard to be applied should depend upon whether the attorney-client relationship between NationsBank and Hahn & Hessen is more fairly characterized as vicarious and attenuated than traditional in nature, *see U.S. v. Nabisco, Inc.*, 117 F.R.D. 40, 46 (E.D.N.Y. 1987), and upon whether the relationship with both clients is continuing.

In *U.S. v. Nabisco*, the court found that when Standard Brands, the company that the law firm had represented, merged into Nabisco, the party seeking to disqualify the firm, Nabisco became the real party in interest in the action in which the law firm represented Standard Brands; any liability incurred by Nabisco at the conclusion of that action would arise on account of its relationship to Standard Brands. As Standard Brands, at that point in time, was merely a spectre, it was too insubstantial to render vicarious the relationship between Nabisco and the law firm. The court was concerned that there was "no intermediary entity juxtaposed between Nabisco and [the law firm]." *U.S. v. Nabisco*, 117 F.R.D. at 46.

Here, Hahn & Hessen never represented either parent holding company before their merger. More to the point, Hahn & Hessen never represented NationsBank nor any of its subsidiaries prior to the merger. Hahn & Hessen's representation was limited to Citizens only. After its change of name to NationsBanc Commercial Corp., Citizens continued as a separate wholly-owned subsidiary of the merged holding company. Hahn & Hessen's representation remained with the entity which continued to hold the rights, liabilities and obligations of Citizens, NationsBanc Commercial Corp., not its parent corporation, NationsBank, and not NCNB, now an independent subsidiary of NationsBank.

The sprawling corporate structure of NationsBank and its plethora of holding companies and financial subsidiaries acquired through recent corporate combinations provides the requisite intercessory to find that the relationship between Hahn & Hessen and NationsBank is attenuated.

We turn to whether the relationship is a continuing one. Hahn & Hessen has indicated that it will withdraw from representation of Citizens if that client does not consent to the continuing representation of the trustee in the suit against NCNB. Ordinarily, this would constitute, at the very least, an appearance of impropriety. *Hartford Accident*, 721 F.Supp. at 540; *Stratagem Development*, 756 F.Supp. at 794 (a law firm may not undertake to represent two potentially adverse clients and then, when the potential conflict becomes actuality, pick and choose between them). This rule is client oriented and focuses on practical problems of access by the attorney to the client's confidential communications, and access by the client to legal representation. It ensures that a prior client will not be cut loose from its legal counsel simply because a more lucrative client comes along with a claim against it. It also ensures that confidences will be honored. *Id.* But the purpose of that rule would not be furthered here by disallowing severance of the relationship with Citizens. For Hahn & Hessen does not propose to "fire" an old client in favor of a new. Indeed the firm's representation of the creditors' committee and also of the trustee actually predates its representation of Citizens in the only matter in which that representation continues. Hahn & Hessen has not played fast and loose with its clients nor turned a blind eye to potential conflicts. Rather, through absolutely no fault of the firm, previously unrelated representations were transmogrified into theoretically related ones through the merger of parent corporations. Further, the Citizens action was dismissed without prejudice almost a year and a half ago, thus, but for the periodic agreement to toll the statute of limitations, Hahn & Hessen is not performing any services for Citizens. The prejudice, if any, to Citizens in having to obtain new counsel would be minimal given the procedural posture of the Citizens' action.

In light of the attenuation in the representation of NationsBank, the fact that Hahn & Hessen does not propose to release an old client in favor of a new and more lucrative representation and the fact that the services being provided to Citizens are, at this point, minimal, the proper test to be applied is the substantial relationship test.

The substantial relationship test involves a determination as to whether there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present suit; and whether the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client. *In re Joint Eastern & Southern Dist. Asbestos Lit.*, 133 F.R.D. 425, 430 (E. & S.D.N.Y.1990); *Bennett Silvershein Assoc.*, 776 F.Supp. at 803. The focus of the court is "on the relationship between the issues in the respective cases and the involvement of the particular attorney sought to be disqualified." *Joint Eastern & Southern Dist. Asbestos Lit.*, 133 F.R.D. at 430. Courts routinely find no substantial relationship when the prior representation concerned subjects unconnected to the case before the court. Lowenthal, *Successive Representation by Criminal Lawyers*, 93 Yale L.J. 1, 17 (1983). In essence, disqualification cases analyze the nature of the prior client representation and the usefulness of information that a lawyer might have learned from that type of representation. *Id.*

The courts have applied the "substantially related" prong strictly, requiring the moving party to demonstrate that the relationship between the two actions is "patently clear" or that the actions are "identical" or "essentially the same". *Silvershein*, 776 F.Supp. at 803 (citing *Government of India v. Cook Indus., Inc.*, 569 F.2d 737, 740 (2d Cir.1978)).

■ Here, there is no "substantial relationship" between the NCNB actions and the Citizens action. Although all are avoiding actions, the facts of the cases are not related in any way whatsoever. Nor does there appear to be any common undecided question of law. None of the matters in which Hahn & Hessen represented Citizens are related to the assets, transactions or financial affairs of the NCNB action. In addition, NationsBank has not shown that Hahn & Hessen's representation of Citizens provided it with confidential information that in any way relates to the NCNB action. Significantly, since the Citizens action was dismissed in January, 1992, Hahn & Hessen's total expenditure of attorney time for Citizens has been 8.3 hours.

■ Even when applying the *per se* approach, disqualification of counsel is inappropriate when the facts in question indicate that a strict application of the ABA canons would not serve their purposes. *Hartford Accident*, 721 F.Supp. at 541.

Hahn & Hessen has been involved in representation of the interests of the unsecured creditors of the Wingspread cases since 1987. The adversary proceedings filed against NCNB pre-date the merger by over one year and were filed when Hahn & Hessen had no relationship with Nations-Bank or any affiliate thereof. As noted earlier, this is not the situation against which the rule seeks to protect. Hahn & Hessen does not seek to drop Citizens because a new and better client has come along. Rather, simply by virtue of the merger, NationsBank is arguably the newer client. *See Stratagem*, 756 F.Supp. at 794 (a firm is to remain with the client in the already existing litigation, and seek new counsel to represent the other, not vice-versa).

■ Given the costs imposed by disqualification, the court should look to the purposes behind the rule violated in order to determine if disqualification is a desirable sanction. *SWS Financial Fund A v. Salomon Bros., Inc.*, 790 F.Supp. 1392 (N.D.Ill. 1992). The Second Circuit has "indeed been loathe to separate a client from his chosen attorney.... The delay and additional expense created by substitution of counsel is a factor to which [it has] attached considerable significance ..." *Silvershein*, 776 F.Supp. at 802 (citing *Bohack*

*Corp. v. Gulf & Western Indus., Inc.*, 607 F.2d 258, 263 (2d Cir.1979)).

The consequences of disqualification here are far more damaging than in most such cases because, at least at present, the Wingspread cases are administratively insolvent. One of the two actions against NCNB arises out of the leveraged buyout of the debtors. The facts are complex, the law is difficult and, assuming that the trustee could even find substitute counsel (an assumption which takes a leap of faith in view of the present insolvency of the estates and the consequent risk that counsel may not be able to be paid in full), one could legitimately question how vigorous the representation would be and whether the adversary process would be impaired. With Hahn & Hessen, on the other hand, the firm has so much unbilled and unpaid time already invested in the cases as well as in the adversary proceedings which were commenced some two and one-half years ago that it has a real incentive to forcefully represent the estates' interests.

For all of the foregoing reasons, the objection to the continued retention of Hahn & Hessen is overruled and the trustee's motion is granted.

SETTLE ORDER consistent with this decision.